**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4900

NERIKA JENKINS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4963

CHERYL APPERSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4964

MIKE THOMPSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-95-66)

Submitted: May 19, 1998

Decided: July 1, 1998

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William J. Rogers, Sr., Staunton, Virginia, for Appellant Thompson;
Liezelle Agustin Dugger, JENKINS & CARMEL, P.L.C., Charlottes-
ville, Virginia, for Appellant Apperson; Bruce Karl Tyler, Afton, Vir-
ginia, for Appellant Jenkins. Robert P. Crouch, Jr., United States
Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney,
Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In these consolidated appeals, Nerika Lakisha Jenkins, Cheryl
Apperson and Mike Thompson each appeal their jury convictions of
conspiracy to possess with intent to distribute and to distribute a mix-
ture or substance containing cocaine base or "crack," in violation of
21 U.S.C. § 846 (1994). All three defendants challenge the suffi-
ciency of the evidence to support their convictions. Jenkins and
Apperson challenge sentencing determinations made under the Sen-
tencing Guidelines. Finding no reversible error, we affirm.

Jenkins, Apperson and Thompson were charged for their roles in
a conspiracy to distribute crack cocaine in the Culpeper, Virginia
area. Viewing the evidence in the light most favorable to the Govern-
ment, as we must, we find there was sufficient evidence to sustain the
jury verdicts. See Glasser v. United States, 315 U.S. 60, 80 (1942).
Evidence at trial consisted mainly of testimony from Appellants' co-
conspirators. According to trial testimony, Paul Jones, a New York
drug dealer, supplied cocaine to various members of the conspiracy

2

by either mailing it by way of UPS or having it personally delivered. On some occasions, the delivery was made personally by Jenkins. Jenkins was also responsible for shipping some of the packages to Culpeper and she also received the money raised from the sale of the crack by way of wire transfers. At least on one occasion, Jenkins attempted to collect money owed Jones from one of the Culpeper drug dealers.

Apperson allowed her residence to be used as a meeting place for Jones and other members of the conspiracy. She was also the named recipient of some of the UPS packages, which she would turn over to other members of conspiracy. Apperson also permitted other members of the conspiracy to use her residence to cook the cocaine into crack cocaine. A scale used to weigh the cocaine was recovered from her home.

Thompson received a package of cocaine which he agreed to turn over to another member of the conspiracy in exchange for an eighth-of-an-ounce of cocaine. Thompson informed the intended recipient when the package arrived and hid the package at a relative's home until it was picked up. After the package was picked up, Thompson attempted to collect the cocaine he was to receive.

"To sustain a conviction[,] the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer , 1 F.3d 1430, 1437 (4th Cir. 1993); see also Glasser, 315 U.S. at 80. Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Tresvant , 677 F.2d 1018, 1021 (4th Cir. 1982). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be `confined to cases where the prosecution's failure is clear.'" United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). During this inquiry, this Court neither weighs evidence nor reviews witness credibility. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

To support the convictions under § 846, the Government was required to prove that there was an agreement between two or more

persons to violate the federal drug laws, that the defendants knew of it, and that they voluntarily joined it. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement. See Blumenthal v. United States, 332 U.S. 539, 557 (1947); United States v. Wilson, 721 F.2d 967, 973 (4th Cir. 1983). Hence, a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced. See Iannelli v. United States, 420 U.S. 770, 777 n.10 (1975); United States v. Dozie, 27 F.3d 95, 97 (4th Cir. 1994). Clearly, in this instance, the evidence over-whelmingly supports the conspiracy convictions.

Both Jenkins and Apperson assert that the uncorroborated testi-mony of numerous co-conspirators is insufficient. However, "this cir-cuit recognizes that the testimony of a defendant's accomplices, standing alone and uncorroborated, can provide an adequate basis for conviction." United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993) (citations omitted). Furthermore, "it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Tresvant, 677 F.2d at 1021. In addition, although the evi-dence may lead to different conclusions and interpretations, the jury decides which interpretation to believe. See United States v. Garcia, 868 F.2d 114, 116 (4th Cir. 1989).

Thompson asserts that there was no direct evidence that he knew the contents of the package. Quite the contrary, one witness testified that Thompson told him that he knew what was in the package. Fur-thermore, Thompson also made an effort to hide the package at another person's home and expected to be paid in crack cocaine. Because the evidence was sufficient to support Thompson's convic-tion, the court properly denied Thompson's motion to dismiss.

Jenkins also contends that the sentencing court erred in attributing 1120 grams of crack cocaine to Jenkins to arrive at an offense level of 36. See United States Sentencing Guidelines Manual § 2D1.1(c) (1995). We review the district court's determination of the relevant quantity of drugs for clear error. See United States v. Fletcher, 74 F.3d 49, 55 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W.

4

3260 (U.S. Oct. 7, 1996) (No. 95-9447). We find that the court conducted a thorough and detailed review of the evidence to arrive at its finding. In addition to the presentence report, the court relied largely on trial testimony and the demeanor of witnesses."While this court is generally reluctant to overturn factual findings of the trial court, this is doubly so where the question goes to the demeanor and credibility of witnesses at trial, since the district court is so much better situated to evaluate these matters." United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

The court found trial testimony established over 500 grams of crack directly linked to Jenkins, which, disregarding the remaining amount which the court found was reasonably foreseeable given Jenkins's role in the conspiracy, still leaves Jenkins with a base offense level of 36. In sum, we do not find that the court erred in this instance. Nor did the court err in concluding that the object of the conspiracy was crack cocaine, even though in some instances it was delivered as powder cocaine and later converted into crack cocaine.

Apperson contends that the court erred in imposing a two-level enhancement to the offense level for obstruction of justice based upon the finding that she gave false material testimony at trial. See USSG § 3C1.1 (1995). A witness commits perjury if she: (1) gives false testimony; (2) concerning a material matter; (3) with the willful intent to deceive, rather than as a result of confusion or mistake. See United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995). Once the defendant objects to an adjustment based upon perjury, the district court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition." See United States v. Dunnigan, 507 U.S. 87, 95 (1993). Here, the court found that Apperson gave false testimony concerning a material matter in that she denied receiving packages of cocaine. The court further found that such testimony was intended to deceive in order to rebut the substantial testimony linking her to the conspiracy. Thus, the court's finding encompassed all of the factual predicates for a finding of perjury. See id.; see also United States v. Keith, 42 F.3d 234, 240-41 (4th Cir. 1994).

Based on the foregoing, we affirm the convictions and sentences. We dispense with oral argument because the facts and legal conten-

5

tions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED